UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA SALDANA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 18-cv-01049-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE; ORDER TO SHOW CAUSE**<br><br>Re: Dkt. Nos. 28, 31, 32 |

Pending before the Court are two motions to dismiss Plaintiffs Amelia Saldana and Jose G. Saldana Jr.'s initial complaint. Dkt. No. 1-1 ("Compl."). The first was filed by Wells Fargo Bank, N.A. ("Wells Fargo") and the Bank of New York Mellon ("BNYM"). Dkt. No. 28 ("WF Mot."). The second was filed by U.S. Bank National Association ("US Bank"). Dkt. No. 32 ("US Bank Mot."). Also pending before the Court is US Bank's motion to strike one paragraph of Plaintiffs' complaint related to punitive damages. Dkt. No. 31 ("Strike Mot."). Briefing on all motions is complete. *See* Dkt. Nos. 41 ("WF Opp."), 43 ("WF Reply"), 42 ("US Bank Opp."); 44 ("US Bank Reply"); 38 ("Strike Opp."); 39 ("Strike Reply"). The Court took all motions under submission on August 28, 2018. *See* Dkt. No. 47; Civ. L.R. 7-1(b). After carefully considering the parties' arguments, the Court **GRANTS** the motions to dismiss and **DENIES AS MOOT** US Bank's motion to strike.[1]

//

//

---

[1] Defendants have also filed requests for judicial notice. *See* Dkt. Nos. 29 ("WF RJN"), 32-1 ("US Bank RJN"). Plaintiffs oppose neither request. *See* Dkt. Nos. 41–42. Because no party objects to the Court taking judicial notice of the existence of documents identified in the Defendants' requests, the Court **GRANTS** the requests for judicial notice. *See* Fed. R. Evid. 201(b).

## I. BACKGROUND

On April 27, 2006, Plaintiff Amelia Saldana and her now-deceased husband Jose G. Saldana obtained a home loan secured by a Deed of Trust ("DOT") from World Savings Bank, FSB ("World Savings") in the amount of $420,000.00 ("Mortgage"). Compl. ¶ 12; Compl. Ex. B. The DOT was recorded against 1413 Spring St, Saint Helena, CA 94574-2037 ("Subject Property") in Napa County on May 11, 2006. Compl. Ex. B, at 1. The DOT identifies "World Savings Bank, FSB, its successors and/or assignees" as the lender and loan servicer, and conveys title and power of sale to Golden West Savings Association Service Co. as the trustee. Compl. ¶ 7; Compl. Ex. B, at 2. Golden West Financial Corporation ("Golden West") was the parent company of both the lender and trustee. Compl. ¶ 7.

Plaintiffs allege that, on or before August 28, 2006, World Savings sold the Mortgage loan to the WORLD SAVINGS REMIC 24, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 24 TRUST ("WSR 24 Trust"), for which Defendant BNYM allegedly serves as trustee. Compl. ¶¶ 4, 11. Plaintiffs aver this must have happened because Golden West's Form 10-Q for the period ending June 30, 2006 purportedly "confirmed that it securitized substantially all of its residential mortgage loans." *Id.* ¶ 11 (citing Compl. Ex. C). Plaintiffs point to the following language in the Form 10-Q as additional support: "We often securitize our portfolio loans into mortgage-backed securities. We do this because [mortgage-backed securities] are a more valuable form of collateral for borrowings than whole loans. Securitization activity for the three and six months ending June 30, 2006 amounted to $4.0 billion and $8.6 billion, respectively, compared to $7.0 billion and $8.1 billion for the same periods in 2005." *Id.*

According to Plaintiffs, Wachovia Bank acquired Golden West in mid-2008, and later that same year Wells Fargo acquired Wachovia Bank. Compl. ¶ 8. Wells Fargo Home Mortgage, a division of Wells Fargo assumed the role of loan servicer. *Id.* ¶ 10.

On June 19, 2009, the couple "recorded a Grant Deed granting the Subject Property to the Saldana Family Revocable Trust, with Mr. and Mrs. Saldana serving as joint trustees." Compl. ¶ 1; Compl. Ex. A. The couple's son—Jose G. Saldana Jr.—is purportedly a beneficiary of the trust who resides in the Subject Property. Compl. ¶ 1.

In June 2016, Ms. Saldana and her husband defaulted on the loan, after which Wells Fargo initiated a foreclosure process. Compl. ¶ 32. Specifically, in April 2017, a Substitution of Trustee was recorded indicating NBS Default Services as the foreclosing trustee under the DOT. *Id.* NBS recorded a Notice of Default against the Saldanas on May 18, 2017. *Id.* ¶ 33; Compl. Ex. F. In August 2017, the loan's servicing rights were transferred to a new entity and Wells Fargo assigned all of its interest in the DOT to Defendant US Bank, as trustee for the Truman 2016 SC6 Title Trust.

On January 17, 2018, Plaintiffs Amelia Saldana, as trustee of the Saldana Revocable Family Trust and Jose G. Saldana, Jr., as a trust beneficiary, brought this suit against Defendants Wells Fargo, BNYM, and US Bank, asserting numerous claims related to the Mortgage loan. Plaintiffs seek various damages and to gain an unfettered interest in the subject property, free of liens or encumbrances. The core of Plaintiffs' claims is that, due to the purported "alienation of World Saving's [sic] beneficial interest under the Saldanas' deed of trust in 2006, when it sold the mortgage to the WSR 24 Trust, Defendant Wells Fargo did not succeed to World Savings' [sic] interest in the mortgage in 2008 as the loan was no longer among World Savings' [sic] assets." Compl. ¶ 13.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

1   In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

## III. DISCUSSION

Plaintiffs bring seven causes of action: (1) Declaratory Relief; (2) Quiet Title; (3) Violation of Section 6 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e); (4) Negligence; (5) Violation of California Business and Professions Code, § 17200 *et seq.*; (6) Unjust Enrichment (Quasi-Contract); and (7) Cancellation of Instruments. Compl. ¶¶ 44–96. Defendants move to dismiss all causes of actions. This order first addresses overarching defects in Plaintiffs' case before turning to the individual claims.

### A. Jose G. Saldana, Jr. Lacks Standing

Plaintiffs concede that they failed to allege adequate facts to establish standing as to Plaintiff Jose G. Saldana, Jr. and request leave to amend the complaint. *See* WF Opp. at 7–8; US Bank Opp. at 6. The Court thus **DISMISSES** Plaintiff Jose G. Saldana, Jr.'s claims with leave to amend, but only as to claims the Court does not otherwise dismiss without leave to amend, as discussed below.

//
//
//

### B. Loan Securitization Theory

Plaintiffs' suit is predicated on the factual allegation that because the original lender of the subject loan—World Savings—"securitized" the subject loan in 2006, the loan was no longer among World Savings's assets and thus any beneficial interest in the loan could not have passed to Wachovia, Wells Fargo, or US Bank. Compl. ¶¶ 11–15, 47–51. As Plaintiffs put it, "World Savings alienated all right, title, and interest in Mr. and Mrs. Saldanas' mortgage loan when it sold it to the WSR 24 Trust in 2006" and, as a result, neither Wells Fargo nor US Bank have ever "held a beneficial interest in the Saldanas' loan." *Id.* ¶¶ 13, 47. Plaintiffs thus, for example, contend that Wells Fargo never had any right to enforce the loan contract, collect mortgage payments, or instruct another to initiate foreclosure activity. *Id.* ¶¶ 13, 51.

Wells Fargo argues that the loan securitization theory just described is not a cognizable legal theory to support Plaintiffs' claims. WF Mot. at 6–9. Wells Fargo also argues that even if Plaintiffs' theory is cognizable, Plaintiffs fail to allege sufficient facts to support their theory. *Id.* at 9.

#### i. Loan Securitization Theory's Viability

Wells Fargo argues that Plaintiffs' loan securitization theory is not cognizable to support Plaintiffs' claims because "the power of sale pursuant to the deed of trust is not lost if transferred, sold or assigned to a securities trust, and the beneficiary and its agents continue to retain the rights to initiate a foreclosure upon the borrower's default." WF Reply at 3 (citing *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 214 Cal. Rptr. 3d 292 (Ct. App. 2017)); WF Mot. at 6–9. But Wells Fargo mischaracterizes Plaintiffs' theory. Plaintiffs nowhere dispute that a party that securitizes a loan but also retains the requisite beneficial interest loses the power of sale and may not initiate a foreclosure. Plaintiffs instead contend that a party who sells "all title to, and interest in" a loan thereafter lacks any beneficial interest in the loan whatsoever and thus has no right to act under the loan, including by initiating non-judicial foreclosure proceedings. *See, e.g.*, WF Opp. at 10.

The Court finds Plaintiffs' theory viable. Borrowers have standing to challenge a party's ability to foreclose by alleging a void assignment to the foreclosing party, provided the borrowers allege a "specific factual basis" for challenging the foreclosing authority. *Lundy v. Selene Fin.,*

*LP*, No. 15-cv-05676-JST, 2016 WL 1059423, at *8–13 (N.D. Cal. Mar. 17, 2016); *see also Brewer v. Wells Fargo Bank, N.A.*, No. 16-cv-02664-HSG, 2017 WL 1315579, at *3 (N.D. Cal. Apr. 6, 2017) (adopting *Lundy*'s well-reasoned and persuasive analysis of this issue). And in at least one case, a court has found that a borrower provided a sufficiently specific factual basis that defendants lacked authority to initiate a foreclosure by alleging that "the assignment underlying the foreclosure was void because . . . the original assignee of the deed of trust[] had transferred it to another entity before its assets were subsequently acquired by" the foreclosing entity. *Lundy*, 2016 WL 1059423, at *13. But there, the borrower substantiated that factual allegation with a specific basis from which one could fairly deduce that the borrower's loan was previously transferred to another entity. *See* Verified Complaint ¶ 11, Ex. B, *Lundy v. Selene Fin., LP*, No. 15-cv-05676-JST (N.D. Cal. Mar. 17, 2016), ECF No. 1-1.

### ii. Application to Saldanas' Complaint

Wells Fargo contends that Plaintiffs fail to allege sufficient facts to support their loan securitization theory because Plaintiffs only allege that World Savings "may" have securitized the subject loan based on their general practice of securitizing loans. *See* WF Mot. at 9. Wells Fargo again mischaracterizes the complaint, which states that World Savings in fact securitized the loan, not that it "may" have securitized the subject loan. Compl. ¶ 11. But while the complaint affirmatively states that World Savings gave up any beneficial interest in the subject loan by selling it to the WSR 24 Trust, it also explains that Plaintiffs deduce this fact from information contained in World Savings's parent's Form 10-Q for the period ending June 30, 2006. Compl. ¶¶ 11–12. Turning to that Form 10-Q—attached as an exhibit to the complaint—Plaintiffs rely on two excerpts.[2] First, Plaintiffs claim that Table 3 of the Form 10-Q "confirm[s] that World Savings securitized substantially all of its residential mortgage loans." *Id.* ¶ 11 (citing Compl. Ex. C). That is not what Table 3 shows. Table 3 shows that securitized loans made up roughly 37% of the total loans receivable. Compl. Ex. C at 22 (showing $45,661,886 in "Securitized loans" and $122,192,978 in "Total loans receivable").

---

[2] The Court treats these, and any other written instruments attached to the complaint, as part of the pleading. *See* Fed. R. Civ. P. 10(c).

6

Second, Plaintiffs point to the following language in the Form 10-Q: "We often securitize our portfolio loans into mortgage-backed securities. We do this because [mortgage-backed securities] are a more valuable form of collateral for borrowings than whole loans. Securitization activity for the three and six months ending June 30, 2006 amounted to $4.0 billion and $8.6 billion." *Id.* But this language says nothing, and suggests nothing, about how World Savings or its parent managed the only loan at issue in this case.

The Court is also concerned that Plaintiffs' counsel appears to have outright misrepresented the language of this portion of the Form 10-Q in the complaint and its briefs. The excerpt, in full, reads: "We often securitize our portfolio loans into mortgage-backed securities. <u>Because we have retained all of the beneficial interests in these [mortgage-backed securities] securitizations to date, GAAP requires that securitizations formed after March 31, 2001 be classified as securitized loans and included in our loans receivable.</u> We do this because [mortgage-backed securities] are a more valuable form of collateral for borrowings than whole loans. Securitization activity for the three and six months ending June 30, 2006 amounted to $4.0 billion and $8.6 billion, respectively, compared to $7.0 billion and $8.1 billion for the same periods in 2005." Compl. Ex. C, at 26 (emphasis added). Counsel twice omitted the underlined sentence without so much as an ellipsis. Compl. ¶ 11; WF Opp. at 4. This omission is particularly troubling because the omitted sentence, on its face, appears to contradict Plaintiffs' entire factual basis for their loan securitization theory. Plaintiffs' counsel is thus **ORDERED TO SHOW CAUSE** at 2:00 p.m. on February 28, 2019 why he should not be sanctioned for misrepresenting the record in this manner.

Although the Court, at this stage, ordinarily accepts all factual allegations in the complaint as true, the Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055 (quoting *Sprewell*, 266 F.3d at 988). Nor does the Court accept as true allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988. That is precisely what the Court is faced with here. The complaint makes the bald assertion that World Savings not only securitized the subject loan but also alienated any and all interests to the loan in 2006. But that

7

allegation is, at best, nothing more than an "unwarranted deduction[] of fact" based on the Form 10-Q on which Plaintiffs rely.

Should Plaintiffs submit an amended complaint that continues to rely on their loan securitization theory, they must plead some specific reasonable factual basis for asserting that the subject loan was not only one of the loans securitized by World Savings but also sold in such a way that World Savings alienated any and all interest in the subject loan, as Plaintiffs must allege to support a viable loan securitization theory. *Cf. Lundy*, 2016 WL 1059423 at \*13. And the Court will expect Plaintiffs to explain why they previously left the above-described language from the Form 10-Q out of the original complaint, and why that language does not warrant dismissal of Plaintiffs' claims with prejudice.

### C. Declaratory Relief, Quiet Title, Unfair Competition Law, Unjust Enrichment, and Cancellation (Claims 1, 2, 5–7)

Plaintiffs first, second, fifth, sixth, and seventh claims all rely on the same factual predicate: World Savings sold the subject loan to the WSR 24 Trust in 2006, alienating all interest in the loan and thus rendering void subsequent assignments to Wells Fargo and US Bank. Compl. ¶¶ 44–58, 82–96. These claims are all thus derivative of—and fall based on—Plaintiffs' defectively-pled loan securitization theory.

Because the Court rejects Plaintiffs' loan securitization theory as insufficiently pled, the Court thus **DISMISSES** each of these claims with leave to amend subject to the conditions outlined above.

### D. RESPA (Claim 3)

Against Wells Fargo, Plaintiffs assert violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") for alleged failures to timely respond to Qualified Written Requests ("QWRs"). Compl. ¶¶ 38–43, 60–64. Wells Fargo counters that, among other things, the communications at issue were not legitimate QWRs under RESPA because they did not identify loan servicing errors. WF Mot. at 10–13.

Under Section 2605(e) of RESPA, a loan servicer has an obligation to act when it receives a QWR from the borrower or borrower's agent "for information relating to the servicing of [the]

loan." 12 U.S.C. § 2605(e)(1)(A). "The term 'servicing' means receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Id.* § 2605(i)(3). Here, Plaintiffs characterize two letters, dated June 23, 2016 and October 18, 2016, as QWRs. Compl. ¶¶ 38–43, Exs. E4 & L. The first letter, however, simply disputed the validity of the loan and not its servicing. *See, e.g.*, Compl. Ex. L, at 1 ("[P]lease be advised that the alleged indebtedness is now disputed in its entirety. Therefore, we are now withholding our mortgage payments until we get your complete validation as to who is the valid lender and present beneficiary in the subject Mortgage Loans, as well as the authorized loan servicer."). The second letter reiterates that the Saldanas seek to "address[] [their] dispute and request for debt validation." Compl. Ex. E4, at 2; *see also id.* at 6 ("[W]e need [Wells Fargo's] assistance . . . to legally assure us that we are paying the *real party in interest* and *present beneficiary* in our mortgage loan(s) . . . .").

Having reviewed the letters in question, submitted with the initial complaint, the Court agrees with Wells Fargo that both sprawling letters only disputed the loan's validity and thus did not give rise to a duty to respond under Section 2605(e). *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) ("In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)."). Because the purported QWRs' contents are undisputed, the Court finds that leave to amend should not be granted because nothing pleaded in an amended complaint would change that the letters in question did not give rise to a duty to respond under Section 2605(e) and thus "the pleading could not possibly be cured by the allegation of other facts." *See Lopez*, 203 F.3d at 1127; *see also Dang v. Residential Credit Sols., Inc.*, No. C-14-02587-RMW, 2014 WL 5513753, at *7–8 (N.D. Cal. Oct. 31, 2014) (dismissing without leave to amend a RESPA claim, in part, because one purported QWR "did not specifically concern the servicing of plaintiff's loan," but rather "requested verification of the proof of claim and disputed the validity of the debt"); *Nuezca v. Capital One Fin. Corp.*, No. 3:13-cv-04081-JSC, 2014 WL 573882, at *3–4 (N.D. Cal. Feb. 12, 2014) (dismissing a RESPA claim with prejudice where "the [] letter inquir[ed] only about the Loan's validity," and thus "fail[ed] to meet the standards of a QWR as a matter of law");

9

*Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1013–14 (N.D. Cal. 2009) (same). Accordingly, Plaintiffs' RESPA claim is **DISMISSED** without leave to amend.[3]

### E. Negligence (Claim 4)

Also against Wells Fargo alone, Plaintiffs' allege negligence in the processing of a loan application of Ms. Saldana and her late husband. Compl. ¶¶ 67–81. Plaintiffs argue Wells Fargo owed a general duty of care "to conduct loan modification negotiations with the Plaintiffs in good faith and to comply with all applicable laws." Compl. ¶ 69. Wells Fargo moves to dismiss this cause of action, arguing (1) it did not owe a duty of care to Plaintiffs; and (2) Plaintiffs fail to adequately allege causation. WF Mot. at 13–19.[4]

In California, the requirements for a claim of negligence are "(1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result." *Peter W. v. S.F. Unified Sch. Dist.*, 131 Cal. Rptr. 854, 857 (Ct. App. 1976). Generally, in a lender-borrower relationship, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991). In *Alvarez v. BAC Home Loans Servicing*, however, the California Court of Appeal found that lenders owe borrowers a "duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them." 176 Cal. Rptr. 3d 304, 306 (Ct. App. 2014). In reaching this conclusion, the California court noted that the transaction at issue was clearly intended to affect the plaintiff, harm from mishandling the application was foreseeable, and that allegations of dual tracking and the unequal positions of lender and borrower made the conduct morally blameworthy. *Id.* at 309–12.

---

[3] Plaintiffs request leave to amend their RESPA claim to remedy other deficiencies in the pleading. *See* WF Opp. at 11. Curing those deficiencies, however, would not change the unmet threshold requirement that the letters in question constitute QWRs.

[4] Wells Fargo also moves to dismiss any alleged financial elder abuse claim, believing Plaintiffs might have asserted one based on the following comment within Plaintiffs' negligence cause of action: "Wells Fargo's conduct constitutes financial elder abuse." WF Mot. at 19 (citing Compl. ¶ 78). To whatever extent Plaintiffs intended to advance an elder abuse claim in the complaint, they appear to have abandoned the prospect now by failing to respond to Wells Fargo's arguments in support of dismissal. The Court thus dismisses any such claim.

The Ninth Circuit, however, has limited *Alvarez*'s reach. *See Anderson v. Deutsche Bank Nat'l Trust Co. Ams.*, No. 14–55822, 2016 WL 2343248, at *1 (9th Cir. May 4, 2016).[5] In *Anderson*, the Ninth Circuit held that lenders do not owe borrowers a duty of care to process a loan modification application within a particular timeframe. *See id.* While Plaintiffs premise their negligence claim here primarily on different conduct, such as Wells Fargo's alleged failure to provide adequate information and providing unjustified explanations, *Anderson*'s reasoning applies equally here. As in *Anderson*, any harm to Plaintiffs is not "primarily attributable" to Wells Fargo's processing of the loan modification application. *Id.* "Rather, when 'the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, is not . . . closely connected to the lender's conduct.'" *Id.* (quoting *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 820 (Ct. App. 2013) (alterations omitted)). And where, as here, "the lender did not place the borrower in a position creating a need for a loan modification, no moral blame attaches to the lender's conduct." *Id.* (quotations and alterations omitted).

The Court therefore **DISMISSES** Plaintiffs' negligence claim with leave to amend.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motions to dismiss Plaintiffs' initial complaint **WITH LEAVE TO AMEND** as to all claims except Plaintiffs' RESPA claim. Any amended complaint must be filed within 21 days of the date of this order.

Because the Court grants Defendants' motions to dismiss the initial complaint in its entirety, the Court **DENIES AS MOOT** US Bank's motion to strike portions of the initial complaint. *See* Dkt. No. 31.

The Court also **SETS** an initial case management conference ("CMC") for February 28, 2019 at 2:00 p.m. in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA. The parties shall meet and confer and submit a joint case management statement by February 21, 2019, which must include a proposed case schedule. Concurrently with this CMC, Plaintiffs' counsel is **ORDERED**

---

[5] As an unpublished Ninth Circuit decision, *Anderson* is not precedent, but can be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

**TO SHOW CAUSE** why he should not be sanctioned, for the reasons discussed above. The Court requires scrupulous candor, forthrightness, accuracy and the highest standard of professionalism from all counsel. Counsel are on notice that they must conduct themselves accordingly, and the Court will not tolerate half-truths or mischaracterizations.

**IT IS SO ORDERED.**

Dated: 2/8/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge